**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| ROBERT T. BLOUGH and GWENDOLYN K. BLOUGH, husband and wife, and the marital community composed thereof, individually and as Trustees for the BLOUGH LIVING TRUST; WILLIAM L. FEHR and DIANE L. FEHR, husband and wife, and the marital community composed thereof; SOOK JUN JI, individually; JEFFREY L. OLIPHANT and SANDRA C. OLIPHANT, husband and wife, individually and as Trustees for the JEFFREY AND SANDRA OLIPHANT LIVING TRUST; on behalf of themselves, and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SHEA HOMES, INC., a Delaware corporation, <br><br> Defendant. | Case No. 2:12-cv-01493-RSM <br><br> ORDER DENYING SUMMARY JUDGMENT |

**I. INTRODUCTION**

This matter comes before the Court upon Defendant Shea Homes, Inc.'s motion for summary judgment (Dkt. # 29). For the reasons set forth below, Defendant's motion is DENIED.

ORDER DENYING SUMMARY JUDGMENT - 1

## II. BACKGROUND

Plaintiffs, a proposed class of homeowners, filed this claim against Defendant Shea Homes Inc. for allegedly misrepresenting the construction quality of their homes in violation of Washington's Consumer Protection Act ("CPA"). Dkt. # 4, Ex. A, p. 2.  Shea manufactured and sold single-family homes to Plaintiffs in "Trilogy at Redmond Ridge" ("Trilogy"), an "affluent" housing development for persons age 55 and over. *Id.* at 3; Dkt. # 29, p. 10.

Prior to purchasing their homes, Plaintiffs received marketing materials assuring a high level of construction quality and quality checks.  Dkt. # 4, Ex. A, pp. 3-5.  Through these materials, Defendant claimed to "give [its] owners the best quality . . . as a means of building superior value into every aspect of [its] homes and communities," to conduct "rigorous quality reviews," and to provide "superior quality and craftsmanship." *Id.* at 4.  Defendant's website also declared a commitment to building "high quality homes," and its homeowners guide claimed to work with the "best materials" and partners providing high quality. *Id.* at 5.

Defendant began selling homes at Trilogy as early as 2001.  Dkt. # 1, Ex. A, p. 3.  Each Plaintiff signed a standard Residential Real Estate Purchase and Sale Agreement ("Sale Agreement") containing a disclaimer of warranties and representations.  Dkt. # 29, pp. 6-7.  Under the Sale Agreement's terms, "neither Seller nor any sales associate, employee, or agent of Seller has made or will make any representation or warranty, express or implied, not contained in this Agreement concerning. . . quality of construction."  Dkt. # 32, Ex. A, p. 12.

Trilogy residents allegedly began to discover construction defects in their homes as early as 2004.  Dkt. # 44, Ex. 2, pp. 4-6.  Defendant's "Work Order Detail Reports" specify the date and nature of the complaints. *See* Dkt. # 44, Ex. 2.  The methods of discovering and repairing the defects vary.  Some residents experienced water intrusion, allegedly due to the

lack of flashing around windows.  *See* Dkt. # 35, p. 4.  Others claim to have seen mold growing out of corbels (Dkt. # 38, p. 4) or were informed of the alleged defects during the course of regular home maintenance (Dkt. # 45, p. 4).  Trilogy residents claim that the alleged defects have created dangerous conditions and caused them to incur expenses to cure the defects.  Dkt. # 45, pp. 2, 5 (alleging that a rotting corbel fell from the home of a Trilogy resident).

Triology residents have filed CPA claims in King County Superior Court against Defendant on two occasions prior to the present litigation, including one class action.  *See Gaines v. Shea Homes*, No. 10-2-09002-9 SEA; *Snead v. Shea Homes, Inc.*, No. 10-2-12930-8 SEA.  Both claims alleged misrepresentations as to the construction quality of exterior paint.  Dkt. # 44, Ex. 5, p. 9; Ex. 6, p. 7.  The named plaintiffs in the *Gaines* class are not listed among the named plaintiffs in the present litigation, but details regarding the *Gaines* class certification are unknown.  The court denied Defendant's motions for summary judgment in both cases.  Dkt. # 44, Ex. 5, p. 25; Ex. 6, p. 20.  Defendant has since indicated that the *Gaines* class stipulated to dismissal pursuant to a settlement.  Dkt. # 48, p. 2.

Defendant moves for summary judgment on Plaintiffs' CPA claim on the grounds that it is a "garden-variety construction defect claim[]" that falls outside the CPA's scope, and that claims by two named plaintiffs are time-barred.  Dkt. # 29, pp. 2, 28.  Defendant also moves to strike declarations submitted by Plaintiffs in response to the instant motion.  Dkt. # 48, Ex. A.  Plaintiffs subsequently filed a motion for class certification.  Dkt. # 57, p. 24.

### III. DISCUSSION

**B.    Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

ORDER DENYING SUMMARY JUDGMENT - 3

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material when it is relevant to an element of a claim or defense and might affect the outcome. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractor's Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Summary judgment is appropriate where the nonmoving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rather than relying on mere allegations in the pleading, the nonmoving party must set forth specific facts "showing that there is a genuine issue for trial." *See T.W. Elec.*, 809 F.2d at 630. Applying this standard, the court draws reasonable inferences and views facts in the light most favorable to the nonmoving party. *Id.* Thus, summary judgment must be denied where a rational trier of fact might resolve an issue in favor of the non-moving party. *Id.*

Additional considerations emerge when a party moves for summary judgment prior to certification of a class action. The district court must rule on the issue of class certification "as soon as practicable after the commencement of an action brought as a class action." Fed.R.Civ.P. 23(c)(1). However, the court is not required to address certification before ruling on a defendant's motion for summary judgment. *See Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984); *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wash.2d 790, 808 (2005).

As a general rule, a party moving for summary judgment may not raise new issues for the first time in its reply brief. *See, e.g., Thompson v. Comm'r*, 631 F.2d 642, 649 (9th Cir. 1980); *Wood v. Household Finance Corp.*, 341 B.R. 770, 773 (W.D. Wash. 2006). Otherwise, the non-moving party would be unable to respond to the new issue, as it is generally not entitled to additional briefing after the reply. *See* Local Rules W.D. Wash. CR 7. A defendant must raise any affirmative defenses in its answer to the complaint with enough specificity to give the plaintiff "fair notice" of the defense being advanced. *See, e.g., Woodfield v. Bowman*,

ORDER DENYING SUMMARY JUDGMENT - 4

193 F.3d 354, 362 (5th Cir. 1999) (concluding that merely naming an affirmative defense may be insufficient to confer "fair notice" without specificity or factual particularity).  Nevertheless, the Ninth Circuit has held that a district court has discretion to consider an argument first raised in a reply brief.  *See Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001).

**C.    Requests to Strike Plaintiffs' Declarations**

Defendant seeks to strike declarations submitted by Plaintiffs in response to the summary judgment motion.  Dkt. # 48, Ex. A.  Defendant moves to strike ten unsworn declarations in their entirety.  Dkt. # 48, Ex. A, p. 4.  In the alternative, Defendant seeks to strike specific lines from the declarations pursuant to a broad range of evidentiary rules.  *Id.*

Motions to strike must be contained and supported by adequate detail within the applicable page limit.  Where the court has granted permission to file an over-length motion, the reply brief shall not exceed one-half the length of the opposition brief.  Local Rules W.D. Wash. CR 7(f)(4).  Any requests to strike material contained in or attached to the submissions of opposing parties shall be included within this page limit.  *See* Local Rule 7(g).  Otherwise, the court may refuse to consider any text exceeding the limit.  Local Rule 7(e)(6).  The court may also decline to consider an argument comprised of a "laundry list" of challenges akin to a "bullet point listing." *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to "sort through the noodles" of a party's "'spaghetti approach' of heaving the entire contents of a pot against the wall in hopes that something would stick").  The court does not consider claims that were not actually argued and refrains from manufacturing parties' arguments.  *Id.*

The Court will consider Defendant's request to strike declarations for failure to satisfy the federal signing requirements, as it remained within the page limit.  Declarations must be

ORDER DENYING SUMMARY JUDGMENT - 5

supported by an oath or writing that certifies the statements under penalty of perjury. 28 U.S.C. § 1746. Nevertheless, courts may permit parties to cure unsworn declarations. *See Tukesbrey v. Midwest Transit, Inc.*, 822 F. Supp. 1192, 1198 (W.D. Pa. 1993); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). Although Plaintiffs' unsworn declarations initially failed to comply with § 1746, Plaintiffs cured each declaration—all but one within three days of Defendant's objections. *See* Dkt. # 49; Dkt. # 51. Defendant's objections are therefore moot, as Plaintiffs timely cured the defective declarations.

The Court declines to consider Defendant's remaining objections to evidence introduced through an exhibit to its reply brief. The exhibit contains eight pages of briefing with substantive (although cursory) objections to Plaintiffs' declarations. *See* Dkt. # 48, p. 4; Dkt. # 48, Ex. A. After the Court granted Defendant's motion to file an over-length motion (Dkt. # 28), Plaintiffs' brief in opposition totaled twenty-five pages (Dkt. # 25). In accordance with Local Rule 7(f)(4), Defendant was permitted to submit a reply brief half of that length, or thirteen pages. The reply brief exceeded this limit, totaling fourteen pages in addition to eight pages of objections. Dkt. # 48. Although Defendant surpassed the page limit, it nevertheless failed to actually argue its objections. Rather, Defendant produced a "laundry list" of evidentiary rules that may or may not apply. *See,e.g.,* Dkt. # 48, Ex. A, p. 6 (listing objections on grounds of lack of foundation, inadmissible hearsay, and irrelevance, without discussion). Accordingly, the Court declines to consider the merits of Defendant's objections at this time, as they neither remained within the page limits nor formulated a prevailing argument.

**D. Res Judicata and Collateral Estoppel**

Both parties assert that prior lawsuits have preclusive effect in the present litigation. Plaintiffs assert that Defendant's unsuccessful motions for summary judgment in *Gaines* and

ORDER DENYING SUMMARY JUDGMENT - 6

*Snead* bar its arguments on summary judgment through collateral estoppel. Dkt. # 33, p. 7. In contrast, Defendant claims that *Gaines* bars Plaintiffs' CPA claim in its entirety through res judicata. Dkt. # 48, p. 2. Washington preclusion law applies, as 28 U.S.C. § 1738 requires federal courts to give a state-court judgment "the same preclusive effect as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986).

Plaintiffs assert that Defendant is precluded from relitigating a defense related to the issues of: (1) non-actionable puffery, (2) a lack of reliance based on the Sale Agreement, and (3) Plaintiffs' inability to establish a CPA claim based on failure to conform to industry standards. Dkt. # 33, p. 7. In Washington, collateral estoppel bars relitigation of an issue where the party seeking to enforce preclusion proves the following elements:

> (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

*Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wash.2d 255, 262 (1998).

Plaintiffs have failed to prove the second element, as a denial of summary judgment is not a final judgment on the merits. While a grant of summary judgment may confer preclusive effect, *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Northwest Youth Services*, 97 Wash.App. 226, 233 (1999), a denial may not. *Fluke Capital & Mgmt. Services Co. v. Richmond*, 106 Wash.2d 614, 618 (1986). A denial is neither final nor on the merits, as the issues are not genuinely litigated and the order is not appealable. *Id.*; *Zimny v. Lovric*, 59 Wash. App. 737, 739 (1990). As a result, Defendant's denied motions for summary judgment are not final judgments intended to be given preclusive effect. Even if the issues were fully litigated, the order denying summary judgment did not contain any substantive legal

ORDER DENYING SUMMARY JUDGMENT - 7

conclusions. *See* Dkt. #44, Ex. 6, pp. 19-20. Rather, the Court denied each motion without explanation, whether on the merits of the claims or due to a genuine issue of material fact. *Id.* at 20.

Defendant raises a res judicata defense for the first time in reply to Plaintiffs' collateral estoppel argument. Dkt. # 28, p. 2; *see* Dkt. # 6, p. 6 (listing res judicata in Defendant's Answer to Plaintiff's Complaint without any factual or legal support). Res judicata and collateral estoppel are two distinct, though similar, legal principles. *See Bordeaux v. Ingersoll Rand Co.*, 71 Wash.2d 392, 395 (1967). In contrast to the collateral estoppel elements identified above, res judicata bars all claims that were or could have been raised when a prior judgment has identical (1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of persons for or against whom the claim is made. *Id.* at 395. Accordingly, a party cannot establish a res judicata defense by merely citing the opposing party's collateral estoppel analysis. Because the essential elements of res judicata and collateral estoppel differ slightly, Plaintiffs were not given an opportunity to respond to the res judicata defense. Furthermore, Defendant's conflation of the doctrines and reliance on Plaintiffs' collateral estoppel analysis preclude it from proving each element of res judicata. *See* Dkt. # 48, p. 2.

Looking to the merits of Defendant's res judicata claim, analysis is similar for the first and second elements. To determine identity of subject matter, the court considers the parties involved and the nature of the claim. *Landry v. Luscher*, 95 Wash.App. 779, 785 (1999). Identity of causes of action hinges on whether the actions: (1) involve "rights or interests established in the prior judgment"; (2) deal with the same evidence; (3) involve an infringement of the same right; and (4) arise from same transactional nucleus of facts. *Knuth v. Beneficial Washington, Inc.*, 107 Wash. App. 717, 732 (2001).

ORDER DENYING SUMMARY JUDGMENT - 8

Defendant has failed to prove identity of subject matter and causes of action. The parties have provided only minimal information concerning the previous litigation. Defendant attempts to satisfy each element by merely quoting Plaintiffs' brief, which stated: "[i]n all three cases Trilogy homeowners alleged Shea misrepresented its quality of construction . . . the same evidence is offered and precisely the same claim is asserted." Dkt. # 48, p. 2. By declining to cite to *Gaines* or *Snead*, Defendant fails to identify the parties involved or any potential impairment of previously-established rights.

Similarly, there remains a genuine issue of material fact as to the third element: identity of the persons and parties involved. Although class actions are an exception to the general rule that one cannot be bound by a judgment in proceedings to which he is not a party, the type of class certification determines whether a judgment will bind absent parties. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940). Even if the buyers were the same in *Gaines* and the present litigation (*See* Dkt. # 48, p. 2), Plaintiffs were not named in *Gaines*, and it is unclear whether they were bound by the resulting judgment. *See* Dkt. # 44, Ex. 5. Without more information regarding the *Gaines* class certification, there remains a general issue of material fact as to the binding effect of prior litigation. As a result, Defendant has not proven its res judicata defense.

**E. CPA Claim**

As an initial matter, the Court finds that Washington's six-year statute of repose for claims relating to construction of real property does not bar Plaintiffs' claims. Defendant moves to bar the claims of Blough and Fehr, named Plaintiffs in the proposed class, under RCW 4.16.310. Dkt. # 29, p. 24; *See* RCW 4.16.310 (providing that "[a]ll claims or causes of action as set forth in RCW 4.16.300 shall accrue" upon substantial completion of construction). The parties do not dispute that Blough and Fehr's homes were substantially complete more

ORDER DENYING SUMMARY JUDGMENT - 9

than six years before the June 15, 2012 filing date of this action. Dkt. # 29, p. 24. Thus, their claims would be barred if they are covered by RCW 4.16.300.

RCW 4.16.300 does not implicate all causes of action brought against a builder. The six-year statute of repose applies to "causes of action of any kind against any person, arising from such person having constructed . . . any improvement upon real property." RCW 4.16.300. While the statute unambiguously applies to builders, its application is limited when the builder also sells the property. *See Pfeifer v. City of Bellingham*, 112 Wash.2d 562, 568 (1989). In *Pfeifer v. City of Bellingham*, the Washington Supreme Court concluded that RCW 4.16.300 does not shield a builder from liability for concealing a construction defect during a sale. *Id.* at 565. Drawing from the Restatement (2d) of Torts § 353, which creates a "post-sale theory [of recovery]," the Court held that builders who also sell property "should face the liability of sellers" for intentional misrepresentations. *Id.* at 568. Because a builder's status is not a shield from otherwise actionable claims in its selling capacity, courts must identify whether the cause of action in fact "aris[es] from" construction. *Id.* at 567-68.

Defendant's attempt to distinguish *Pfeifer* as a "limited exception" for concealments with a "potential to cause personal injuries" is inapposite. First, no Washington court has limited *Pfeifer* to concealments that result in personal injuries. Although the *Pfeifer* Court indicated that the defendant had created a "dangerous condition," it did not distinguish between personal and property injuries. *Pfeifer*, 112 Wash.2d at 570. Furthermore, the Court's decision was ultimately based on statutory language unique to Washington and independent of § 353: an unequivocal distinction between the acts of constructing and selling property. *Id.* at 568. Defendant cannot incorporate an additional requirement into the statute of repose where it has not been recognized in Washington. Even if Washington law had incorporated a

ORDER DENYING SUMMARY JUDGMENT - 10

requirement of personal risk into RCW 4.16.300, there is a genuine issue of material fact as to the dangerous conditions created by Defendant's alleged concealment. Looking at the facts in light most favorable to Plaintiffs, a reasonable jury could identify dangerous conditions, as rotting wood is alleged to have collapsed on at least one occasion. *See* Dkt. # 45, p. 5.

Second, Plaintiffs' cause of action is based on the CPA rather than § 353. As such, the CPA requires a different burden of proof. *See* RCW 19.86.090 (establishing that "[a]ny person who is injured in his or her **business or property**…may bring a civil action") (emphasis added). In fact, even CPA cases outside of Washington acknowledge a right to seek recovery for property damages irrespective of personal injury. *See Higgenbottom v. Noreen*, 586 F.2d 719 (9th Cir. 1978); *Bass v. Jones*, 533 So.2d 780 (Fl. Ct. App. 1989). The CPA also expressly establishes a four-year statute of limitations governing allegedly unfair or deceptive business practices. *See* RCW 9.86.120 (providing that "any action to enforce a claim for damages under [the CPA] shall be forever barred" unless commenced within four years after the cause of action accrues). Under the discovery rule applied in this Court, time does not begin accruing until the plaintiff discovers, or reasonably could have discovered, each essential element of the claim. *Putz v. Golden*, 847 F. Supp. 2d 1273, 1281 (W.D. Wash. 2012). In a CPA claim, the statute begins tolling once the plaintiff has "actual knowledge of fraud or facts sufficient to put a reasonable person on notice," which is a question for the trier of fact. *Reeves v. Teuscher*, 881 F.2d 1495, 1500 (9th Cir. 1989).

Defendant has failed to establish that Plaintiffs' claims are barred under the applicable statute of limitations. Blough alleges to have noticed decaying corbels in 2011, just a year before filing the complaint on June 15, 2012. Dkt. # 34, pp. 4-5. Fehr purchased his home in February 2006 and claims to have discovered the alleged defects "a year or two after moving

ORDER DENYING SUMMARY JUDGMENT - 11

in." Dkt. # 38, p. 2. Depending on the exact date of the discovery, time could have begun accruing as early as 2007, which would bar the claim in 2011. Thus, while the discovery rule keeps Blough's claim within the applicable four-year statute of limitations, there is a genuine issue of material fact as to Fehr's discovery date.

Looking to the merits of the CPA claim, Plaintiffs have sufficiently pled each element to survive summary judgment. The CPA provides a civil remedy for consumers when companies engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. As a class of private citizens, Plaintiffs have the burden of proving that Defendant's practices constitute a CPA violation. *Hangman Ridge v. Safeco*, 105 Wash.2d 778, 784 (1986). To prevail on their claim, Plaintiffs must ultimately prove that (1) Defendant has engaged in an unfair or deceptive act or practice; (2) in trade or commerce; (3) affecting the public interest; (4) resulting in injury to Plaintiffs' business or property; and (5) proximately caused by Defendant's unfair practice. *Id.* at 784-85. Defendant challenges the first and fifth elements. *See* Dkt. # 29 at 2.

To satisfy the first element, existence of an unfair or deceptive act, Plaintiffs must prove that the act (1) had the capacity to deceive a substantial portion of the public, or (2) was unfair or deceptive per se. *Id.* at 785-86. What constitutes an unfair or deceptive act is a question of law, unless the parties dispute the facts surrounding the defendant's actions. *See id.* at 720; *Burbo v. Harley C. Douglass, Inc.*, 125 Wash.App. 684, 700 (2005). Plaintiffs are not required to show intent to deceive. *State v. Kaiser*, 161 Wash.App. 705, 719 (2011). Rather, an act is deceptive "'if there is a representation, omission, or practice that is likely to mislead' a reasonable customer." *Id.* at 719 (quoting *Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27, 50 (2009)).

ORDER DENYING SUMMARY JUDGMENT - 12

In real estate transactions, deceptive practices include misrepresentations of material importance and failure to disclose material facts. *Nguyen v. Doak Homes, Inc.*, 140 Wash.App. 726, 734 (2007). Unlike general allegations of noncompliance with industry standards, misrepresentations in the "commercial and entrepreneurial acts of marketing" may be actionable under the CPA. *Id.* at 734. S*ee Carlile v. Harbour Homes, Inc.*, 147 Wash.App. 193, 212 (2008). Misrepresentations as to quality and workmanship may also be actionable, including construction defects that are known to the seller and undiscoverable by the buyer at the time of the sale. *See id.* at 214; *Griffith v. Centex*, 93 Wash.App. 202 (1998) (finding that knowledge of purchasers' high expectations, premature deterioration of materials, and rejection of suggested alternatives amounted to the seller's knowledge of a defect). In order to impart a duty to disclose, an alleged defect must adversely affect the property or be dangerous to the property, health, or life of the purchaser. *Griffith*, 93 Wash.App. at 216.

Plaintiffs therefore satisfy the first element by showing that Defendant affirmatively misrepresented construction quality or failed to disclose defects. Plaintiffs have sufficiently pled, so as to survive summary judgment, that Defendant (1) affirmatively represented to sell high-quality homes, and (2) had a duty to disclose construction defects. Work Order Detail Reports indicate that Defendant was aware of the alleged defects, yet continued to sell homes using the same materials. *See* Dkt. # 44, Ex. 2, pp. 2-9. Although contractors allegedly recommended alternatives to avoid damage (Dkt. # 36, p. 4), Defendant continued to sell homes with hollow corbels and without flashing as late as 2008 (Dkt. # 39, p. 2). Plaintiffs' declarations support that such defects were not discoverable at the time of the sale. *See, e.g.,* Dkt. # 34, p. 4 (claiming to have discovered hollow corbels while inspecting cracked paint); Dkt. # 38, p. 4 (indicating that buyers toured model homes with solid corbels). Viewing this

ORDER DENYING SUMMARY JUDGMENT - 13

evidence in a light most favorable to the nonmoving party, Plaintiffs have sufficiently pled that Defendant had an obligation to disclose known defects that were undiscoverable to purchasers.

Defendant asserts several defenses challenging the first element. The first asserted defense—the alleged truth of Defendant's misrepresentations and compliance with quality control checks—is a factual matter that cannot be determined on summary judgment. Defendant also claims a "reasonableness defense" that excludes "acts or practices which are reasonable in relation to the development or preservation of business or which are not injurious to the public interest" from CPA liability. RCW 19.86.920. To determine whether the defense applies, courts weigh the public interest "against a business's right to conduct its trade." *Dwyer v. J.I. Kislak Mortg. Corp.*, 103 Wash. App. 542, 548 (2000) (indicating that the CPA does not prohibit a business from charging service fees, but merely prohibits it from doing so in a deceptive manner). Similarly, courts recognize a defense for acts performed in "good faith under an arguable interpretation of existing law." *See Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wash.2d 133, 155 (1997). Defendant has failed to support either defense, as it has not explained why its allegedly deceptive acts relate to business development or constitute good faith.

Defendant also refutes the fifth element—proximate cause. Plaintiffs have the burden of proving that they would not have suffered an injury, but for the defendant's unfair or deceptive practice. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington*, 162 Wash.2d 59, 83 (2007). A party may establish proximate cause through various methods, including, but not limited to reliance. *See, e.g., Schnall v. AT&T Wireless Services, Inc.*, 171 Wash.2d 260, 277 (2011). The trier of fact must look at all the facts related to causation; other

ORDER DENYING SUMMARY JUDGMENT - 14

factors, such as payment for an allegedly deceptive service, may or may not be sufficient to establish causation independent from reliance. *Indoor Billboard*, 162 Wash.2d at 83.

Individual proof of reliance may not be feasible in class action CPA litigation, as it may conflict with the predominance of common issues required for class certification. *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 558 (W.D. Wash. 2008). As a result, this Court has indicated that a presumption of reliance may be appropriate in CPA class actions where the plaintiffs allege fraud primarily through omissions. *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007). Conversely, the Court has denied class certification where a deception-based theory of fraud requires a showing of individualized reliance. *Kelley*, 251 F.R.D. at 557. If individual reliance cannot be shown without predominating common issues in a class action, this Court has accepted Plaintiffs' "price inflation" theory where consumers paid more for a good or service than they would have without the defendant's alleged deception. *Kelley*, 251 F.R.D. at 558-59. Accepting the theory solely for class certification purposes, the Court acknowledged that no Washington case has addressed this distinct method of proving causation, and it was unsure whether it would be accepted in Washington courts. *Id.* at 559.

Defendant challenges reliance by identifying cases in which puffery, defined as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely," precludes reliance under various state consumer protection statutes. S*ee, e.g., Stickrath v. Globalstar, Inc.*, 527 F.Supp.2d 992, 998 (N.D. Cal. 2007); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). Although Washington courts have deemed puffery non-actionable in the context of breach of warranty claims, *see, e.g., Touchet Valley Grain Growers, Inc. v. Opp v. Siebold Gen. Constr., Inc.*, 119 Wash.2d 334 (1992), they have

ORDER DENYING SUMMARY JUDGMENT - 15

not expressly addressed puffery in the CPA context. Nevertheless, courts have concluded that assurances of "high quality and workmanship" are affirmative and actionable representations, reliance on which is a question of fact in a CPA claim. *Carlile*, 147 Wash.App. at 214.

Plaintiffs have sufficiently established causation to survive summary judgment. Although Plaintiffs have asserted theories of misrepresentations and omissions, their claim does not assert fraud primarily through omissions, which may be entitled to a presumption of reliance. Dkt. # 1, Ex. A, p. 7; Dkt. # 33, p. 2-4. Even so, making all reasonable inferences in favor of the nonmoving party, Plaintiffs' declarations exhibit reliance on Defendant's alleged misrepresentations. *See e.g.,* Dkt. # 34, p. 7; Dkt. # 39, p. 2-3 (describing the importance of purchasing a low-maintenance home); Dkt. # 40, p. 4. Plaintiffs have also adequately supported their alternative "price inflation" theory. *See, e.g.,* Dkt. # 45, p. 2 (stating that residents were willing to pay more for the "peace of mind" of problem-free living).

Finally, Defendant claims that the Sale Agreement's non-reliance clause bars causation. Defendant ignores Washington cases that affirm CPA claims despite a waiver of rights under the underlying contract. *See Keyes v. Bollinger*, 31 Wash.App. 286, 293 (1982) (confirming that the right to recover under the CPA is independent of any underlying contractual rights). Thus, the non-reliance clause does not preclude causation, and Plaintiffs have established a genuine issue of material fact that requires a factfinder to weigh evidence.

### IV. CONCLUSION

Having considered Defendant's motion, the response and reply thereto, all of the attached declarations and exhibits, and the remainder of the record, the Court hereby finds and ORDERS:
(1) Defendant's motion for summary judgment (Dkt. #29) is DENIED.

ORDER DENYING SUMMARY JUDGMENT - 16

(2) Defendant's motion to strike (Dkt. # 48, Ex. A) is DENIED.

DATED this 4 day of December 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING SUMMARY JUDGMENT - 17