1
2
3
4
5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

6
7
8

ROBERT T. BLOUGH and GWENDOLYN K.
BLOUGH, husband and wife, and the marital
community composed thereof, individually, and
as Trustees for the BLOUGH LIVING TRUST;
WILLIAM L. FEHR and DIANE L. FEHR,
husband and wife, and the marital community
composed thereof; SOOK JUN JI, individually;
JEFFREY L. OLIPHANT and SANDRA C.
OLIPHANT, husband and wife, and the marital
community composed thereof, individually and
as Trustees for the JEFFREY AND SANDRA
OLIPHANT LIVING TRUST; EMILIO
ACOSTA and JILL ACOSTA, husband and
wife, and the marital community composed
thereof, on behalf of themselves, and others
similarly situated,

                          Plaintiffs,

          v.

SHEA HOMES, INC., a Delaware corporation,

                          Defendant.

Case No.  2:12-cv-01493 RSM

ORDER ON MOTIONS

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

          THIS MATTER comes before the Court on Plaintiffs' Amended Motion for Class

Certification (Dkt. # 108), as well as associated Motions to Strike by Plaintiffs and Defendant

(Dkt. ## 127, 143, 155). Also pending before the Court are numerous discovery-related

motions by both parties: Plaintiffs' Motion to Compel (Dkt. ## 164, 168), Motions to Seal

(Dkt. ## 166, 190), Motion to Strike Defendant's Supplement (Dkt. # 186), Motion to Compel

ORDER ON MOTIONS – 1

Defendant to De-Designate Documents Marked Confidential (Dkt. ## 191, 193), and Motion for Protective Order to Quash Defendant's Non-Party Subpoenas (Dkt. # 212); as well as Defendant's Motion for Additional Depositions (Dkt. # 178), Motion for Order Requiring Plaintiffs to Submit a Trial Plan (Dkt. # 210), and Motion to Compel (Dkt. # 222). On July 8, 2014, the Court heard oral argument on class certification and inquired into various discovery disputes. Having considered the parties' arguments, the extensive factual record, and relevant authority, and for the reasons stated herein, the Court denies Plaintiffs' Amended Motion for Class Certification and rules on the additional pending motions as follows.

### Background

The facts of this case are provided in detail in the Court's previous order denying summary judgment. *See* Dkt. # 77. Plaintiffs assert a single claim for violation of Washington's Consumer Protection Act ("CPA") by Defendant Shea Homes, Inc. ("Shea") for alleged construction defects in homes at the "Trilogy at Redmond Ridge" housing development ("Trilogy"). *See* Dkt. # 112, Second Amended Complaint [hereinafter "Compl."]. Since 2001, Shea has manufactured and sold single-family homes in Trilogy, an "affluent" planned community for persons age 55 and over. *Id.* at ¶¶ 2.6, 2.8. At present, nearly all of the planned 1,530 homes at Trilogy are finished. *See* Dkt. # 32, ¶ 2. Named Plaintiffs have all purchased homes at Trilogy, either directly from Shea (Plaintiffs Blough, Fehr, Ji, and Oliphant) or as subsequent purchasers from a prior owner (Plaintiffs Acosta). Compl., ¶ 3.5.

Plaintiffs allege that prior to purchasing their homes, they received marketing materials in various forms assuring a high level of construction quality and quality checks. Through these materials, for instance, Shea claimed to "give [its] owners the best quality ... as a means of building superior value into every aspect of [its] homes and communities," to conduct "rigorous quality reviews," and to provide "superior quality and craftsmanship." Compl., p. 4. Defendant's website declares a commitment to building "high quality homes," and a Trilogy homeowners guide distributed to buyers claimed to provide high quality by working with the "best materials" and partners. *Id.* at 5. As part of its marketing strategy, Shea trademarked and promoted the term "Superiology," which it defined as "the hundreds of

ORDER ON MOTIONS – 2

features and practices that stand behind the Shea Homes commitment to give our owners the best quality, most exciting designs and highest level of service available, as a means of building superior value into every aspect of our homes and communities." *See* Dkt. # 89, Ex. 3. Shea also disseminated a promotional video and homeowner's guide to prospective buyers that assured its homes would be subject to a "multi-point quality check" and "quality assurance inspection process." *See* Dkt. # 41, Ex. 1; Dkt. # 34, Ex. 3. Shea's promotional materials further included assurances of "quality for years to come," homes "more…durable than conventionally built homes," and "little maintenance." *See* Dkt. # 34, Ex 3; Dkt. # 44, Ex. 10.

Along with these affirmative representations of high quality construction, Plaintiffs allege that Shea failed to disclose its noncompliance with geotechnical engineering requirements, architects' plans, and building codes. Plaintiffs assert that Shea knowingly, and without disclosure to buyers, departed from building standards in at least eight areas, encompassing: failures to install proper flashing on windows, doors, corbels, columns, brickmould and stone wainscoting, and Hardiplank siding; failures to install decks and patios with necessary clearance, flashing, or vapor barriers; and failures to install garage floors with vapor barriers. *See* Dkt. # 108, pp. 6-16. Plaintiffs contend that defects resulting from these departures have resulted in rot and other damage from water intrusion into the Trilogy homes.

In opposition, Defendant presents evidence of the variation in home construction, in the advertisements to which buyers were exposed, and in the transaction mechanisms for home purchase. According to Shea's Area Vice President, Richard Obernesser, Shea constructed homes of 23 model types in the Trilogy community, each with three available exterior styles, all of which could be individually modified with various layout options, decks, an extra garage, and other features. *See* Dkt. # 131, ¶ 5; *id.* at Ex. 2. During the 13-year period over which putative class members purchased their home, Shea's own advertisements evolved in form and substance. *Id.* at ¶ 9; Dkt. # 132, ¶ 3. For instance, while Trilogy maintained a Tour Center during most of this period to provide information and facilitate tours to potential buyers, staffed by a shifting base of employees, Shea did not introduce and disseminate its Superiology campaign until September 2007. Dkt. # 131, ¶¶ 9, 13-15; Dkt. # 132, ¶¶ 4-5. Home purchasers, including named Plaintiffs, also report learning about Trilogy from sources

ORDER ON MOTIONS – 3

other than Shea, including through friends and real estate agents, and cite various motivations for their purchase. *See, e.g.*, Dkt. # 128, ¶¶ 40, 46, 47; *id.* at Ex. 2, pp. 10-11 (first learned about Trilogy from daughter); *id.* at Ex. 4, pp. 17-18 (learned about Trilogy from wife and an associate); *id.* at Ex. 5, pp. 11-13 (learned about Trilogy from real estate agent). While most homes were initially purchased from Shea directly, sometimes with an arranged third-party pre-purchase inspection, many homes were subsequently sold and even resold several times without Shea's involvement. *See, e.g.*, Dkt. # 131, ¶¶ 11, 18-19.

On December 4, 2013, the Court denied Defendant's Motion for Summary Judgment upon locating genuine issues of material fact on various elements of Plaintiffs' CPA claim. Dkt. # 97. Plaintiffs subsequently amended their complaint to add the Acostas, subsequent purchasers, as named Plaintiffs and to provide additional detail on putative sub-classes. *See* Dkt. # 106; Compl. Through the instant Amended Motion for Class Certification, Plaintiffs now move the Court to certify a class composed of "[a]ll persons who purchased homes at Trilogy at Redmond Ridge." Compl., ¶ 3.1. Plaintiffs propose to divide the total class, consisting of approximately 1,904 individual members, into nine overlapping subclasses consisting of homes with: (1) missing flashings at window (1364 homes); (2) missing flashings at doors (1405 homes); (3) missing flashings at corbels (498 homes); (4) missing flashings at columns (1204 defective columns); (5) missing flashing at patios and decks (1403 homes); (6) missing flashing at brick siding (322 homes); (7) missing flashings or caulking at siding butt-joints (851 homes); and (8) missing vapor barrier at garage floors (1117 homes).[1] Both parties move to strike experts from the opposing party and seek the Court's rulings on numerous discovery-related disputes.

### **Motions to Strike**

As an initial matter, the Court considers Motions to Strike by both Plaintiffs and Defendant regarding evidence and argumentation submitted in relation to class certification.

---

[1] As they were unable to locate a representative, Plaintiffs moved at oral argument to voluntarily dismiss a ninth alleged sub-class consisting of "all persons who purchased homes at Trilogy at Redmond Ridge with Cemplank

ORDER ON MOTIONS – 4

(1) <u>Defendant's Motion to Strike Expert Reports (Dkt. # 127, pp. 50-55)</u>

Shea moves to strike Plaintiffs' expert opinions of Mr. Kelly Metz and Dr. Nayak Polissar as unreliable and irrelevant pursuant to Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993). Plaintiffs offer these exhibits to show that damages are ascertainable on a classwide basis. As documented in their opinions, Mr. Metz, a Master Carpenter and licensed general contractor, first surveyed 101 homes selected by way of random sampling by Dr. Polissar, a statistician. Through this survey, Mr. Metz identified the number of each defect belonging to the putative sub-classes per selected home and provided this information to Dr. Polissar. *See* Dkt. ## 90, 91, 109, 110. Dr. Polissar then estimated the number of occurrences of the alleged defect across 1,465 Trilogy homes. *See* Dkt. # 110. Mr. Metz finally estimated an average cost of repair per alleged defect and multiplied this number across the estimated number of occurrences to calculate damages for the class. *See* Dkt. # 91, Ex. 19 (deriving total repair costs of $19,857,056). Mr. Metz further performed exterior inspections for 174 homes and documented their methods of construction. *See* Dkt. # 91, ¶ 7.

At the class certification stage, "district courts are not required to conduct a full *Daubert* analysis." *Tati v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495 (C.D. Cal. 2012) (distilling Ninth Circuit holdings). Rather, the court "must conduct an analysis tailored to whether an expert's opinion was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance." *Id.; see Ellis v. Costco Wholesale Corp. (Ellis I)*, 240 F.R.D. 627, 635-36 ("At this early stage, robust gatekeeping of expert evidence is not required; rather, the court should ask only if expert evidence is useful in evaluating whether class certification requirements have been met.") (internal quotations omitted), affirmed on this point by *Ellis v. Costco Wholesale Corp. (Ellis II),* 657 F.3d 970, 982 (9th Cir. 2011).

Shea has not shown that the controverted expert reports are insufficiently reliable to admit for the purpose of this Court's analysis of the Rule 23 criteria. Indeed, Defendant identifies no particular Rule 23 criteria for which these opinions fall short but rather attacks

---

siding installed with a 25-year warranty, during the time that Shea advertised that it was installing Hardiplank

the reliability of their methods in general. As to Dr. Polissar's report, Shea principally

complains of his selection of a 95% confidence interval as over-inclusive. However, Shea has

not shown that Dr. Polissar's choice of confidence interval is contrary to accepted scientific

practice in his field or that it renders his and Mr. Metz's model inherently unreliable for the

purpose of showing that damages can be calculated on a classwide basis through extrapolation

from identified defects. *C.f. Comcast Corp. v. Hebrend*, 133 S.Ct. 1426 (2013) (rejecting

statistical model that failed to measure damages resulting from the particular injury on which

the class was certified). As to Mr. Metz's report, Shea disagrees with his calculations of repair

costs, contending, for instance, that they improperly include costs incurred driving to and

from homes, which would be eliminated by batched repairs. Shea's argument to this effect

goes, however, to the weight to be given to his testimony and not to its admissibility. Shea has

not shown that Mr. Metz's survey of a random selection of homes, coupled with his personal

inspection of others, is unreliable as evidence of the commonality of defects or for instructing

the Court in the ascertainability of classwide damages. Whether these reports are sufficient to

demonstrate the commonality of class members' injuries and the manageability of a classwide

damage calculation is a different matter. The Court accordingly denies Defendant's motion to

strike the expert reports of Dr. Polissar and Mr. Metz.


    (2) <u>Plaintiffs' Motion to Strike Expert Opinions and Declarations (Dkt. # 143, pp. 2-6)</u>

        Plaintiffs move the Court to strike the expert opinions of Dr. Charles Cowan and Mr.

Peter Reeb, as well as declaration and accompanying report by Mr. Randy Hart, and

declarations by Ms. Annie Catlin and Mr. Richard Obernesser. Plaintiffs contend first that the

expert opinions of Dr. Cowan (Dkt. # 134) and Mr. Reeb (Dkt. # 135) should be stricken for

failure to disclose pursuant to Federal Rule of Civil Procedure 26. Rule 26(a)(2)(D) provides

that, absent a stipulation or court order, expert testimony offered solely to contradict or rebut

evidence on the same subject identified by another party under Rule 26(a)(2)(B) or (C) must

be disclosed within 30 days after the other party's disclosure. Plaintiffs properly disclosed

their experts, Metz and Polissar, pursuant to Rule 26(a)(2)(B) and provided their reports in

with a 50-year warranty."

ORDER ON MOTIONS – 6

December 2012 and October 2013. Defendant refrained entirely from disclosing its expert reports until filing its opposition to class certification, despite receiving Plaintiffs' expert reports many months prior as well as a discovery request on this subject on January 17, 2013. *See* Dkt. # 144, ¶ 2. While Defendant has correctly noted that the Court's Scheduling Order did not require expert witness disclosure until May 21, 2014 (*see* Dkt. # 162), Shea nonetheless failed to comply with its obligation to supplement its responses to Plaintiffs' interrogatory regarding testifying experts in a timely fashion, and certainly before offering rebuttal expert testimony with its opposition brief. *See* Fed. R. Civ. P. 26(e)(1)(A).

Federal Rule of Civil Procedure 37(c)(1) provides the district court the authority to sanction a party for failing to disclose or supplement in accordance with Rule 26(a) or (e). The Ninth Circuit gives "wide latitude" to the trial court's discretion to issue Rule 37 sanctions and considers "exclusion" to be "an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *See Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2011). Exclusion is the appropriate remedy in this case, where Shea failed to timely disclose the expert reports or to demonstrate that its shortcoming was substantially justified or harmless. *See id.* at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). Accordingly, the Court grants Plaintiffs' motion to strike the undisclosed opinions of Mr. Reeb and Dr. Cowan (Dkt. ## 134, 135).

Plaintiffs further move to strike the declaration and report by Randy Hart (Dkt. # 133) on the ground that Mr. Hart's testimony is unreliable and irrelevant for the purpose of the Court's analysis of the Rule 23 criteria. Mr. Hart, a licensed architect, provided an analysis and evaluation of the reports by Dr. Polissar and Mr. Metz. Plaintiffs object that Mr. Hart is unqualified to comment on Dr. Polissar's report and that his report lacks foundation because he did not personally visit any of the Trilogy homes. Plaintiffs also attack the factual premises behind Mr. Hart's methodology, such as his observations about vapor barrier requirements for the Trilogy homes' garages. Applying the tailored analysis applicable at the class certification stage, the Court finds that Mr. Hart's report is relevant to the Court's assessment of commonality and predominance, particularly in its discussion of the variations between Trilogy housing models, applicable building codes, and repair costs. *See* Dkt. # 133, Ex. A.

ORDER ON MOTIONS – 7

The Court finds that Plaintiffs' objections to Mr. Hart's qualifications to testify on these subjects go to the weight of his testimony rather than its admissibility and accordingly declines to strike his declaration and report.

Plaintiffs also move to strike as hearsay the declaration of Annie Catlin (Dkt. # 132), a senior community representative for Shea Homes at Trilogy, and portions of the declaration of Richard Obernesser (Dkt. # 131), Washington-area Vice President for Shea. Plaintiffs' objections to these declarations are unavailing, as Catlin and Obernesser testify on the basis of their personal experience and observations, as documented in their declarations. Their declarations are also relevant to the Court's analysis of predominance and commonality. The Court accordingly declines to strike Ms. Catlin's and Mr. Obernesser's declarations.

(3) <u>Defendant's Motion to Strike or Disregard Misleading Statements (Dkt. # 155)</u>

Shea moves the Court to strike or disregard certain "misleading statements" in Plaintiffs' reply to their Amended Motion for Class Certification. The offending statements pertain to Plaintiffs' averment in their reply brief that Mr. Metz had counted the total number of defects in Trilogy homes. Shea contends that, in fact, Metz had only counted the total number of *features* in the homes. Counsel for Plaintiffs has acknowledged this unintended inaccuracy. *See* Dkt. # 129, Ex. B (email by Plaintiffs' counsel acknowledging that "[t]he title of the document ('Components') is correct. My reference to Defects was not."). Accordingly, the Court grants Shea's motion to strike and disregards the inaccurate statements in Plaintiffs' reply at Dkt. # 143, p. 21 & n. 142.

**Class Certification**

**Class Certification Standard**

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). In order to avail himself of this exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). The party seeking class certification

bears the burden to prove that she has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

To satisfy subsection (a) of Rule 23, Plaintiffs must establish through evidentiary proof that (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of those of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a); *Comcast*, 133 S.Ct. at 1432. Plaintiffs frame their case as a Rule 23(b)(3) class action, which further requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3).

Although the trial court exercises broad discretion in determining whether to certify a class, the court must nonetheless conduct a "rigorous analysis" to determine whether the party seeking certification has satisfied all the necessary Rule 23 elements. *Wal-Mart,* 131 S.Ct. at 2551. In particular, the predominance requirement of Rule 23(b)(3) is "even more demanding than Rule 23(a)." *Comcast*, 133 S.Ct. at 1432*.* The trial court must take a "close look at whether common questions predominate over individual ones" in assessing the suitability of a proposed Rule 23(b)(3) class action. *Id.* (internal quotation omitted).

While Rule 23 "does not set forth a mere pleading standard," the moving party must "affirmatively demonstrate his compliance" with Rule 23 – that is, "he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S.Ct. at 2551. It may accordingly be "necessary for the court to probe behind the pleadings before coming to rest on the certification question," thereby performing an analysis that entails "overlap with the merits of the plaintiff's underlying claim." *Comcast*, 133 S.Ct. at 1432 (internal quotations and citations omitted). Nonetheless, Rule 23 does not grant courts a "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). The trial court may consider questions going to the merits "to the extent – but only to the extent –

that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

### a) **Numerosity**

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. Courts generally find that classes of at least 40 members are sufficiently numerous to satisfy this first element. *See McCluskey v. Trustees of Red Dot Corp.*, 268 F.R.D. 670, 674 (W.D. Wash. 2010); *Novella v. Westchester* County, 661 F.3d 128, 143 (2d Cir. 2011) (reciting the view of many district courts that classes of 40 or more generally meet the numerosity requirement). Shea does not object to class certification on the basis of numerosity. As joinder of Plaintiffs' proposed class of over 1,900 homeowners, or of the hundreds of homeowners in each proposed sub-classes, would clearly be impracticable, the Court finds that Plaintiffs have met their burden to show that the numerosity requirement is met.

### b) **Commonality**

To show commonality, Plaintiffs must establish that there are questions of law and fact common to the class. Fed. R. Civ. P. 23(a)(2); *Ellis II*, 657 F.3d at 981. This requirement is "construed permissively," such that not all questions, or even a preponderance of them, need be common to satisfy Rule 23(a)(2). *Id.*; *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). A putative class can satisfy the commonality requirement "so long as there is even a single common question." *Parsons v. Ryan*, 2014 WL 2523682, *11 (9th Cir. 2014) (quoting *Wang*, 737 F.3d at 544).

Still, it is not enough that Plaintiffs merely allege a common question, such as a violation of the same provision of law; rather, they must "pose a question that will produce a common answer" as to the source of the class members' injuries. *Ellis II*, 657 F.3d at 981. "What matters to class certification is not the raising of common 'questions' – even in droves -- but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S.Ct. at 2551-52 (emphasis in original). Since *Wal-Mart*, the Supreme Court requires that all class members' claims "depend upon a

ORDER ON MOTIONS – 10

common contention," and that the common contention be "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S.Ct. at 2551. To assess whether the class members' claims share such a common contention requires that the court "identify the elements of the class members's [*sic*] case-in-chief." *Parsons*, 2014 WL 2523682, * 11 (quoting Stockwell, 2014 WL 1623736, *6). Here, Plaintiffs must accordingly show that there is at least one question in common to the class, which is capable of yielding a common answer to an element of Plaintiffs' CPA claim such that it would drive this litigation toward resolution.

It is clear that in the instant case there is at least one common question that can be productively litigated en masse to yield a common answer going to an element of Plaintiffs' CPA claim. Questions of fact and law common to the class of Trilogy homeowners include: (1) whether a homes' possession of  one or more of the eight alleged defects gives rise to compensable injury within the meaning of the CPA, (2) whether Shea knew or should have known about the defects and the likelihood that these defects would result from its departure from building codes and architect specifications, (3) whether Shea had a duty to disclose defects to buyers, (4) whether Shea's alleged concealment or failure to disclose known defects, combined with its advertisement of high quality construction, constituted an unfair or deceptive practice within the meaning of the CPA.

Although answering these questions may not determine Shea's liability under the CPA, doing so would move the litigation toward resolution. *See Helde v. Knight Transp.*, 2013 WL 4488311, * 3 (W.D. Wash. 2013) (finding that with respect to the putative class's CPA claim, common questions concerning the nature and scope of allegedly deceptive advertising met the commonality requirement). Answering any of these questions in the affirmative would build toward a showing of Shea's liability with regards to the class as a whole. Conversely, were Shea to establish that its failure to disclose known defects and its alleged misrepresentations did not constitute actionable unfair or deceptive practices within the meaning of the CPA, Plaintiffs' claim would be subject to dismissal for all class members en masse.

Shea's objections regarding the extent of individualized inquiries that would be needed to establish its liability for any class member's injury are misplaced. A showing of the extent

ORDER ON MOTIONS – 11

of individualized inquiries required for certain CPA elements goes toward the Rule 23(b)(2) predominance inquiry rather than the Rule 23(a) commonality requirement, which merely requires a showing of a single common question capable of producing a common answer. *See Wal-Mart*, 131 S.Ct. at 2566 (Ginsburg, J., dissenting) (cautioning that "[i]f courts must conduct a 'dissimilarities' analysis at the Rule 23(a)(2) stage, no mission remains for Rule 23(b)(3)").

c) **Typicality**

To establish typicality, Plaintiffs must show that the claims or defenses of the named Plaintiffs are typical of those of the class as a whole. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissible standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members [of the proposed class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis II*, 657 F.3d at 984 (internal quotations omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* The typicality requirement is not satisfied where "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). In the instant case, Plaintiffs have carried their burden to show that the claims and defenses of the named Plaintiffs are typical of those of the class.

Here, named Plaintiffs are typical of the class in the nature of the injury they suffer – that is, the evidence establishes that they have purchased Trilogy homes with one or more of the eight defects that define the proposed sub-classes. *See, e.g.*, Dkt. # 91, Ex. 2 (inspection report by Mr. Metz documenting damage to homes of named Plaintiffs Blough, Fehr, Ji, and Oliphant); Dkt. # 144, Ex. 8(g), pp. 48-49, 67 (deposition of Jill Acosta discussing documentation of unflashed corbels and windows in her home); *id.* at Ex. 8(e), pp. 123-24 (deposition of William Fehr discussing growth of mushrooms and mold around water-

damaged corbels). Plaintiffs are also typical of the class in that they have been generally subject to the same allegedly unfair and deceptive practices carried out by Shea as members of the proposed class as a whole. That there may be particularized facts pertaining to the named Plaintiffs' purchase of their homes and the extent of their injuries does not defeat typicality; "Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each []other or to every class member." *Parsons*, 2014 WL 2523682, *19. However, the typicality of Plaintiffs' claims does not end the inquiry. Plaintiffs must also carry their burden to show that the named Plaintiffs will not be preoccupied with defenses unique to them.

Shea contends that certain of the named Plaintiffs will need to focus on individualized defenses, to the detriment of the class. For instance, Defendant asserts statute of limitations defenses against several of the named Plaintiffs, including the Fehrs and Bloughs. *See* Dkt. # 127, p. 42. Despite the fact that some, but not all, of the proposed class members will possess similar statute of limitations problems, the Ninth Circuit has clarified that it is not error to certify a class and separate out statute of limitations issues for individual adjudication at the end of trial. *See Arthur Young & Co. v. U.S. Dist. Court*, 549 F.2d 686, 696 (9th Cir. 1977); *see also Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007). More problematic is Plaintiffs' attempt to include in the class structure both former homeowners who have sold their houses, such as the Fehrs, and subsequent homeowners who purchased their houses from non-Shea sellers, such as the Acostas. Shea aptly points out that former homeowners may be subject to unique defenses concerning their own knowledge and disclosure of defects upon sale to subsequent homeowners. Subsequent homeowners who made their purchase after defects were repaired further cannot share an injury with the former owners of their home who incurred the repair expenses, and vice versa. Nonetheless, Shea has not shown, and the Court has not uncovered, any reason that the Fehrs or Acostas are themselves likely to be subject to these defenses or that, if they were, these defenses would not be shared by a substantial proportion of the class as a whole.

In addition, unlike in *Hannon*, Defendant has not shown that the named Plaintiffs possess such particular background and factual situations that they will be subject to defenses not shared by other class members, such as lack of reliance on Shea's representations. *C.f.* 976

ORDER ON MOTIONS – 13

F.2d at 508 (finding that, due to named plaintiff's unique background experience and factual situation, it was predictable that a substantial portion of the litigation would focus on defenses unique to him). Though Shea contends that Mr. Oliphant, a lawyer and commercial real estate developer, is situated differently with respect to his understanding of Shea's statements, Shea has not shown that Mr. Oliphant possesses any particular experience with residential home construction and housing contracts, which would subject his claim to serious rebuttal. *See* Dkt. # 128, Ex. 22, pp. 9-12. As the Court is satisfied that the named Plaintiffs' claims and defenses are sufficiently representative of those of the class as a whole, and that named Plaintiffs' injuries arise from the same course of injurious conduct, it finds that Plaintiffs have met their burden to establish the typicality prong of the Rule 23(a) analysis.

### d) **Adequacy**

To determine whether the named Plaintiffs will fairly and adequately represent the class, the Court must "resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis II*, 657 F.3d at 985 (internal quotations omitted). The test for adequacy is concerned with locating shared interest between the representatives and the absentees. *Id.*

The Court is satisfied that the named Plaintiffs would adequately represent the class in this case. The class representatives' interests are coextensive with those of the class in that they suffer similar injuries and seek similar relief. Named Plaintiffs have the same interest in obtaining compensation for defects in their homes as members of the proposed class as a whole. The Court is also satisfied that lead counsel will vigorously and diligently prosecute this action on behalf of the class. Indeed, counsel has already conducted extensive discovery and incurred substantial expense ardently preparing this action for class certification, leveraging their substantial experience litigating construction defect matters. *See* Dkt. # 89, ¶¶ 6-8.

In opposing the adequacy of named Plaintiffs to represent the class, Shea first contends that Plaintiffs have failed to state which named Plaintiffs are members of which subclass, a deficiency that Plaintiffs have corrected upon reply. *See* Dkt # 143, p. 16.

ORDER ON MOTIONS – 14

Defendant further contends that the potential conflict of interest between former and subsequent homeowners destroys the adequacy of representation. Shea argues that "in order to recover within any particular subclass, the Fehrs will want to argue that subsequent purchasers should not be entitled to recover, and the Acostas will want to do the same as to prior owners." Dkt. # 127, p. 44. This problem is not eliminated even though Shea's duty to disclose may extend to subsequent purchasers. *See Carlile v. Harbour Homes, Inc.*, 147 Wash. App. 193 (2008) (overturning dismissal of CPA claim by subsequent purchasers against original builder/seller); *see also Lawley v. Northam*, 2011 WL 6013279 (D. Md. 2011) (asserting that seller owes a duty not to conceal material defects "not only to the immediate purchaser of the property in issue, but also to subsequent purchasers, when it is foreseeable that subsequent purchasers would take the property without notice of the fraudulently concealed condition.").

Nonetheless, while it is possible and even likely that such conflicts will arise between certain former and subsequent purchasers, Shea again has not shown that such a conflict will arise with respect to the Fehrs and Acostas in particular. Indeed, the evidence produced thus far establishes that both the Fehrs and the Acostas have incurred injuries by possessing homes with serious defects and are hence positioned to argue on behalf of the class as a whole for recovery. The Court finds unconvincing Shea's additional objections to named Plaintiffs' adequacy, such as their decision to pursue remedies solely related to repair costs. Plaintiffs' decision to limit remedies to that supported by their theory of liability is, in fact, required by the Supreme Court's decision in *Comcast*. *See* 133 S.Ct. at 1433 (confirming the "unremarkable premise" that respondents are only entitled to damages resulting from the theory of liability on which the action is premised). The Court accordingly finds Rule 23(a)(4) satisfied.

e) **Rule 23(b)(3) Predominance**

As Plaintiffs have elected to certify the class under Rule 23(b)(3), the Court must additionally assess whether common questions "predominate over any questions affecting only individual members" and further whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see*

*also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014). To satisfy the predominance requirement, "common questions must be a significant aspect of the class that can be resolved for all members of the class in a single adjudication." *Id.* at 1068 (internal quotations and alteration omitted). Rule 23(b)(3) instructs the trial court to consider the following matters in making this determination:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in this particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23 (b)(3). This analysis "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang*, 737 F.3d at 545; *see also In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009).

The Court's inquiry into whether questions of law or fact common to class members predominate begins, like the Court's Rule 23(a)(2) commonality inquiry, with the elements of Plaintiffs' asserted cause of action. *See Erica P. John Fund, Inc. v. Halliburton*, 131 S.Ct. 2179 (2011). To prevail on their CPA claim, Plaintiffs must prove each of the following five elements: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) an impact on the public interest; (4) an injury to each plaintiff in his or her business or property; and (5) causation. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986).

While Shea raises numerous objections going to the predominance of common questions, principal among them is Shea's contention that establishing causation requires an inherently individualized inquiry. *See* Dkt. # 127, pp. 27-33. Plaintiffs must prove "a causal link between the unfair or deceptive acts and the injury suffered." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash.2d 59, 73 (2007). Under the CPA, "it is not necessary to prove one was actually deceived." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 63 (2009). Rather, "[i]t is sufficient to establish the deceptive act or practice

proximately caused injury to the plaintiff's 'business or property.'" *Id.* at 63-64. To satisfy the causation prong, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard*, 162 Wash.2d at 83. If the injury would have occurred regardless of whether the alleged violation existed, causation is not established. *Panag*, 166 Wash. 2d at 64. While the existence of proximate causation is ultimately a question for the trier of fact, *see Indoor* Billboard, 162 Wash.2d at 83, the court at the class certification stage must nonetheless rigorously examine whether common questions are likely to predominate at trial.

   To determine whether individualized inquiry is required, the Court looks to Plaintiffs' theory of causation. *See Kelley*, 251 F.R.D. at 557. Plaintiffs advance three causation theories: (1) deceptive advertising, (2) omission of materially relevant information, and (3) price inflation. The first of these theories, which Plaintiffs have principally advanced throughout this litigation, cannot, in this case, survive the predominance sieve. In *Kelley*, Judge Pechman cautioned that deceptive advertising theories of consumer fraud "require the trier of fact [] to determine whether individual class members were actually deceived and whether they would have purchased their PCs but for Microsoft's marketing of them as 'Windows Vista Capable.'" 251 F.R.D. at 558. Similarly, the instant trier of fact would need to determine the extent to which each putative class member relied on deceptive advertising regarding the quality of home construction in making his or her purchase, whether the homeowner's purchases were predominantly based on representations about superior quality of construction, and whether and to what extent proposed class members knew about defects at the time of purchase. While causation difficulties need not destroy class certification for a consumer protection action premised on greater uniformity among class members, in this case they threaten to overwhelm its merits. *C.f. Wolin v. Jaguar Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010) (finding that individual factors do not predominate where plaintiffs alleged that defendant uniformly failed to disclose known defect in vehicle alignment geometry).

   To the extent that Plaintiffs rely on deceptive advertising, individualized inquiries far predominate over common questions as to the causation prong of Plaintiffs' CPA claim. Unlike in *Kelley*, where the alleged misrepresentation went to the fundamental features of the

product, the misrepresentation here concerned one aspect – quality of home construction – among the many features of a Trilogy home that appealed to its purchasers. *C.f.*, *Kelley v. Microsoft Corp.*, 359 Fed.Appx. 432 (distinguishing as more vulnerable under Rule 23(b)(3) those cases where "there are numerous reasons why a consumer might use the product other than the feature misrepresented."). Many putative class members in this case acknowledge diverse motivations for their purchase, beyond their understanding of the quality of home construction, such as location, layout, size, and community features. *See, e.g.*, Dkt. # 128, Ex. 4 at pp. 36-37 (discussing landscaping, floor plan, amenities, and location as motivation for purchase); *id.* at Ex. 11 (testifying that purchase decision was primarily based on size of house and proximity to golf course). Others carried out prior home inspections and decided to make their purchase despite known defects. *See* Dkt. # 142, ¶ 48. Given the diverse motivations behind their purchase decisions, exposure to Shea advertisements, and level of knowledge of construction defects at the time of purchase, extensive individual fact-finding would be required at trial to determine the extent to which class members would have suffered injury but for Shea's alleged misrepresentations about the high quality of home construction. *See Poulos v. Caesars* World, 379 F.3d at 668 (declining to certify proposed class because "there was no single, logical explanation for gambling"). The individual fact-finding that would be required to establish this causal nexus for each class member would likely overwhelm "whatever efficiencies may be obtained by resolving the common issues related to Plaintiffs' CPA claim on a classwide basis." *Helde*, 2013 WL 558311, at *5 (holding that common questions did not predominate as to Plaintiffs' CPA claim premised on unfair and deceptive advertising). In fact, in this case, unlike in *Kelley*, there is not even a common answer as to whether Plaintiffs were exposed to the same allegedly deceptive advertising, given the variations in Shea's advertising campaigns over time and the diverse mechanisms through which homeowners made their purchases – some from Shea directly, others through real estate agents, and subsequent purchasers frequently without any interaction with Shea at all.

Plaintiffs also attempt to proceed through an omissions theory of causation. The Washington Supreme Court's causation analysis in *Indoor Billboard* did not apply to CPA cases premised on material omissions. *See Indoor Billboard*, 162 Wash.2d at 82 (discussing proximate causation in cases where there "has been an affirmative misrepresentation of fact").

ORDER ON MOTIONS – 18

While the Washington Supreme Court has never affirmed a presumption of reliance in consumer fraud cases involving material omissions, it has acknowledged that reliance is "virtually impossible to prove" in cases involving nondisclosure of material facts. *See Morris v. International Yogurt Co.*, 107 Wash.2d 314, 328, 729 P.2d 33 (1986); *see also Schnall v. AT&T Wireless Services, Inc.*, 171 Wash.2d 260, 280 (2011) (emphasizing that reliance is not necessarily essential to establishing proximate causation under the CPA). In *Grays Harbor*, this Court drew from securities cases a rebuttable presumption of reliance for CPA fraud claims. *See Grays Harbor*, 242 F.R.D. at 573 (citing *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999)). This presumption shifts the focus of the causation inquiry from what information each class member received to what the defendant "allegedly concealed in light of what consumers reasonably expect," a question capable of generating a common answer across the class without substantial individualized inquiries. *Id.* at 573.

Unfortunately for Plaintiffs, advancing an omissions-based theory of liability does not, in this case, render common questions predominant. First, Plaintiffs have alleged both affirmative misrepresentations and omissions. In such an instance, the Ninth Circuit has clarified that the presumption is only available where "the case can be characterized as one that primarily alleged omissions." *Binder*, 184 F.3d 1064; *see also Grays Harbor*, 242 F.R.D. at 573; *Poulos*, 379 F.3d at 666 (finding that claims "best characterized as either affirmative misrepresentations or 'mixed claims'" were not entitled to presumption of reliance). In denying Defendant's motion for summary judgment, this Court already found that Plaintiffs do not primarily assert fraud through omissions, which may be entitled to a presumption of reliance. *See* Dkt. # 97, p. 16. Plaintiffs now seek, primarily on reply, to recast their theory of the case. The Court does not concur, however, that Plaintiffs' CPA claim is best characterized as one based on omissions, where Plaintiffs have primarily asserted in their operative complaint that they were injured because Shea's deceptive advertising about the high quality of its homes induced their purchase. S*ee* Compl, ¶¶ 2.1, 2.9-2.10, 3.3.1, 3.3.6, 3.3.7, 3.3.9, 3.3.10 (alleging material misrepresentations); *Id.* at ¶ 3.4 ("The primary common question of law is: Did Shea violate the Consumer Protection Act by making false and deceptive representations and material omissions about the quality of its workmanship and product to the Plaintiff class?"). Further, the material omissions that Plaintiffs assert are largely the

ORDER ON MOTIONS – 19

mirror image of Shea's alleged affirmative misrepresentations. That is, Plaintiffs allege that Shea omitted to disclose to buyers that it was deviating from asserted high standards of construction. *See* Dkt. # 108, p. 15 ("In sum, Shea had knowledge that it was not building its homes with even average quality, let alone the superior 'gold standard' quality that it was aggressively marketing to unsuspecting buyers.") Such an attempt to transform affirmative misrepresentations into omissions does not entitle Plaintiffs to a presumption of reliance. *See Poulos*, 379 F.3d at 667.

Yet even accepting the primacy of omissions does not end the inquiry. Defendant can still rebut the presumption of reliance for individual class members by showing, for instance, that they purchased their homes despite knowledge of known defects. *See Morris*, 107 Wash.2d at 328-29 (defendant may rebut presumption of reliance "by proving that the plaintiff's decision would have been unaffected even if the omitted fact had been disclosed"). In this particular case, where discovery has revealed substantial variations in homeowners' knowledge of defects prior to purchase, a presumption of reliance does not alter the predominance of individualized inquiries into causation over common questions. Under either an affirmative misrepresentations or an omissions-based theory of causation, the variations among the purchase experiences, knowledge, and motivations of class members are such that an unmanageable number of mini-trials would result.

Plaintiffs' final theory of causation based on price inflation, raised only in passing, is not susceptible to class treatment in this case. A price inflation theory of liability requires Plaintiffs to show that the prices of the class members' homes were artificially inflated because of Shea's fraudulent misrepresentations. In *Kelley*, Judge Pechman initially allowed a class action suit to proceed under this theory of causation, though she later decertified the class upon finding that Plaintiffs had failed to offer proof of classwide demand or price effect. 2009 WL 413509 (W.D. Wash. 2009) (withdrawing certification). While Plaintiffs have offered evidence demonstrating that certain residents were willing to pay more for the "peace of mind" of low maintenance living, *see* Dkt. # 45, p. 2, demonstrating classwide demand increase and price effects as a result of Shea's misrepresentations still falls prey to the same difficulties of proof and need for individualized inquiry that plagued *Kelley*. *See id.* at **5-8. This theory of recovery is even more problematic in this case where subsequent purchasers

may have obtained their homes at a discount because of disclosed defects or, conversely, former homeowners resold their homes at a premium without themselves disclosing defects. It is also contrary to the Supreme Court's admonition in *Comcast* that class members are only entitled to those damages that result from the theory of liability on which the action is premised. *See* 133 S.Ct. at 1433. Here, Plaintiffs do not seek disgorgement of inflated purchase price but rather compensation for defects. Thus, the recovery that they seek does not parallel a price inflation theory of liability.

Even putting aside the individualized showings of fact necessary to establish causation, Plaintiffs have not shown that common questions predominate. The Ninth Circuit has cautioned against over-reliance on any one factor to the "exclusion of other factors relevant to the predominance inquiry." *In re Wells Fargo*, 571 F.3d at 959. Here, consideration of the other prongs of Plaintiffs' CPA claim does not ameliorate the need for mini-trials. With respect to the first prong – unfair or deceptive acts or practices – class members are not so similarly situated as to eliminate the need for individualized proof and defenses at trial. In *Berger*, the Ninth Circuit affirmed the lower court's decision not to certify a class where individual evidence was required to show that class members were exposed to the same misrepresentations and deceptions. 751 F.3d at 1069. Similarly, in this case Plaintiffs have not alleged that all class members were exposed to the same actionable misrepresentations. Rather, it will be necessary to resolve individualized questions as to which, if any, of Shea's varied advertisements homeowners were exposed to and whether these advertisements contained actionable misrepresentations. The question of exposure is even more complicated for subsequent purchasers who often had little, if any, interaction with Shea.

Individualized inquiries are also required with respect to the injury prong of Plaintiffs' CPA claim. Plaintiffs' allegation of eight sub-classes based on the type of defect does not overcome the substantial variation in the nature and extent of injuries suffered. Some putative class members, for instance, have already received repairs by Shea at its expense, eliminating their claim for a cognizable injury. *See, e.g.*, Dkt. # 128, Ex. 29, ¶ 10. Others have testified that their homes suffered no damage at all. *See, e.g.*, *id.* at Ex. 38, ¶ 9 ("To my knowledge we have not experienced any construction or performance problems with our home…."). The myriad variations in injury within each overlapping sub-class necessitate individual

ORDER ON MOTIONS – 21

evidentiary showings of injury to derive an aggregate, classwide damage award, a challenge that Plaintiffs have not shown they can overcome through statistical sampling. And again, Plaintiffs have offered no mechanism to resolve the conflicts in claims of injury that arise between former and subsequent owners of the same homes. For instance, for those former homeowners who repaired a defect at their own expense prior to sale, the subsequent purchaser obtained a home defect-free. Allowing the former and subsequent purchasers of this same home to recover for a single injury would unjustly sanction double recovery. Plaintiffs' proposed class structure has failed to simplify these conflicts, further necessitating individualized evidentiary showings to assign and apportion damages.

Plaintiffs have likewise failed to show that a class action is overall superior to other methods of adjudication in this case. In determining superiority, the court considers the four factors provided by Rule 23(b)(3). *See Zinser v. Accufix Rsh. Inst., Inc.*, 253 F.3d 1180, 1189, *as amended*, 273 F.3d 1266 (9th Cir. 2001). The Court recognizes that the relatively small size of each putative class member's damages claim – from $3,000 to $13,000 – weighs in favor of class treatment, while the co-location of the class members in a single community in Washington supports litigation in this forum. At the same time, alternative avenues exist for Plaintiffs to bring these claims. Given the individualized evidentiary showings required to demonstrate liability, adjudication through multiple mass actions may be more appropriate in this case for those homeowners whose homes possess unrepaired defects or who have incurred expenses themselves for repair. Homeowners may also avail themselves of Washington State's mandatory arbitration procedure for claims under $50,000. *See* RCW 7.06.020; King Co. Local Rule for Mandatory Arbitration 1.1(a). In fact, a Trilogy homeowner couple has already utilized this procedure, albeit unsuccessfully, to advance a CPA claim for damages related to mold growth in the eaves of their home. *See* Dkt. # 92, ¶ 10. The arbitrator's thorough and well-reasoned decision provides no basis for this Court to question the fairness and efficiency of mandatory arbitration of the instant homeowners' claims. *See* Dkt. # 128, Ex. 36.

The predominance of individualized questions influences the Court's assessment that this case will be insufficiently manageable as a class action. Class action treatment is not "superior" where "each class member has to litigate numerous and substantial separate issues

to establish his or her right to recover individually." *Zinser*, 253 F.3d at 1192. Here, the evidentiary showings that would be necessary to establish liability for each putative class member's CPA claim would swamp the benefits to be obtained through class adjudication. Similarly, Plaintiffs have not shown that classwide damages can be ascertained and apportioned in this case in a way that is both manageable and preserves Defendant's right to litigate individualized defenses. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990) (manageability requirement embraces consideration of the difficulty in calculating and distributing damages). Plaintiffs propose to rely primarily on statistical proof to derive classwide damages at trial, *see* Dkt. # 235, p. 9 (Plaintiffs' proposed trial plan), but doing so would impermissibly "dispense with individual proof of damages" and abridge Shea's entitlement to litigate its defenses. *Six (6) Mexican Americans*, 904 F.2d at 1305; *see also Wal-Mart*, 131 S.Ct. 2561. As a consequence, and given the substantial variation within the class, determining damages in this case would likely devolve into as many individualized showings as there are homes of class members, further fracturing the class action into an unmanageable number of mini-trials. Though the Court expresses sincere sympathy for the Trilogy homeowners' grievances and the plight of living in allegedly shoddily built homes, it cannot find, for all the reasons stated herein, that a class action is the best, or indeed even a feasible mechanism to enable them to seek redress.

## **Discovery Motions**

Both parties have filed numerous discovery-related motions, many of which are now moot. The Court considers them each in turn:

(1) Motion to Seal Portions of Plaintiffs' Motion to Compel (Dkt. # 166)

The Court strikes Plaintiffs' Motion to Seal and unseals Plaintiffs' Motion to Compel and its supporting declaration (Dkt. ## 168, 169). Plaintiffs' Motion to Seal is moot, as the parties agree to the public accessibility of the controverted documents. *See* Dkt. # 170 (Defendant does not oppose unsealing). The Court declines to award attorneys' fees to Plaintiffs associated with their bringing this motion, as Plaintiffs: (1) failed to properly meet and confer with Defendant in accordance with LCR 5(g)(3)(A), and thereby filed an

unnecessary motion; (2) failed to offer authority for their attorneys' fees request; and (3) did not prevail on their Motion to Seal.

(2) Motion to Compel Defendants to Produce Documents (Dkt. ## 164, 168)

Plaintiffs move the Court for an order compelling Shea to produce documents in response to Request No. 4 in Plaintiffs' Fourth Set of RFPs, as well as Requests No.'s 1 and 2 in Plaintiffs' Fifth Set of RFPs. Plaintiffs' Fourth RFP No. 4 requests settlement agreements, non-disclosure agreements, and confidentiality agreements between Shea and any current or former homeowner, Trilogy subcontractor, or Trilogy employee. *See* Dkt. # 168, Ex. 9. Plaintiffs' Fifth RFP's No.'s 1 and 2 seek all documents related to claims made by homeowners, defects, damages Shea observed, or any repairs, modifications, payments, or reimbursements with respect to burst water pipes or improperly installed roof vents, respectively, at Trilogy homes. *Id.* at Ex. 13. Plaintiffs also move for an award of attorneys' fees associated with bringing this Motion, pursuant to Fed. R. Civ. P. 37(a)(5) (providing that "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion…to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees.").

Federal Rule of Civil Procedure 26(b) allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and that is either admissible at trial or "reasonably calculated to lead to the discovery of admissible evidence." FRCP 26(b)(1). In addition, upon finding good cause, "the court may order discovery of any matter relevant to the subject matter involved in the action." Pre-trial discovery is "ordinarily 'accorded a broad and liberal treatment.'" *Shoen v.* Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) (citing *Hickman v.* Taylor, 329 U.S. 495, 507 (1947)). However, overbroad subpoenas may be quashed or modified. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006).

As to Plaintiffs' Fourth RFP No. 4, requesting disclosure of settlement agreements, the Court agrees with Plaintiffs that these documents are relevant and must be produced to the extent that they are related to construction defects, and repairs thereto, in the homes of named Plaintiffs at Trilogy. Shea shall timely produce these documents, subject to notifying the other parties to those agreements and providing them an opportunity to object. Shea shall not be

ORDER ON MOTIONS – 24

required to produce agreements unrelated to construction defects, such as those embracing severance and employee compensation, which are irrelevant to Plaintiffs' claims and defenses.

The Court grants Plaintiffs' Motion with respect to Plaintiffs' Fifth RFPs No.'s 1 and 2 and orders Shea to produce documents related to burst water pipes and improperly installed roof vents. Plaintiffs' CPA claim, as articulated in their operative complaint, embraces construction defects, including, "without limitation," the nine defects used to define Plaintiffs' initially proposed sub-classes. *See* Compl., ¶ 2.2. Plaintiffs' Amended Complaint elsewhere contends in relation to their CPA claim that putative class members' homes "are at an increased risk of suffering from water intrusion and resulting property damage." *Id.* at ¶ 2.3. As is clear from the face of Plaintiffs' operative complaint, the defects used to define the now obsolete sub-classes are illustrative of but not necessarily coextensive with the injuries for which Plaintiffs seek redress. The Court accordingly orders Shea to produce documents pertinent to the presence of these additional two defects in the homes of named Plaintiffs at Trilogy, as the Court finds them sufficiently related to Plaintiffs' CPA claim.

As the Court has substantially granted Plaintiffs' Motion to Compel upon providing Shea an opportunity to be heard, the Court finds that Plaintiffs are entitled to an award of reasonable expenses. Plaintiffs shall submit a declaration itemizing fees and costs within ten judicial days of the entry of this Order.

(3) Motion for Additional Depositions of Witnesses (Dkt. # 178).

The Court strikes as moot Shea's Motion for leave to conduct depositions of the 422 individuals disclosed in Plaintiffs' First Supplemental Witness Disclosure. In response to a telephonic motion conference with the Court, and as formalized in the Discovery Order entered by this Court, the parties have stipulated to allow Shea to conduct half-day depositions of a narrowed list of Plaintiffs' proposed trial witnesses. *See* Dkt. # 244. The Court admonishes Defendant to abstain from providing extraneous argumentation in its motions, such as, in this instance, arguments directed at class certification.

(4) <u>Motion to Strike Defendant's Supplemental Exhibit (Dkt. # 186)</u>

The Court grants Plaintiffs' Motion to Strike Defendant's Supplemental Exhibit. Plaintiffs move the Court to strike Shea's notice of supplemental exhibit (Dkt. # 179), which Shea filed in support of its opposition to class certification over two months after the noting date for Plaintiffs' Amended Motion for Class Certification had passed. Local Civil Rule 7 provides that all briefing must be filed prior to a motion's noting date with two exceptions: an LCR 7(g) surreply filed pursuant to notice and LCR 7(n) supplemental authority. The instant supplemental exhibit constitutes neither a surreply nor supplemental authority and is accordingly improper under the rules of this Court. Further, while some courts have permitted parties to file supplemental exhibits after the relevant motion's noting date, they have done so upon motion for authorization to supplement the record. *See, e.g.*, *Continental Cas. Co. v. Duyzend*, 2014 WL 468014 (W.D. Wash. 2014); *Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 2011 WL 780876 (W.D. Wash. 2011). Allowing Shea to unilaterally disregard the local rules and to supplement the record without prior leave of the Court would unfairly prejudice Plaintiffs and potentially open a floodgate for impertinent and untimely filings. Accordingly, Defendant's supplemental exhibit (Dkt. # 179) shall be stricken.

(5) <u>Motion to Seal Evidence in Motion to De-Designate Documents (Dkt. # 190)</u>

The Court strikes Plaintiffs' Motion to Seal portions of Plaintiffs' Motion to Compel as well as three supporting exhibits, pursuant to LCR 5(g). Defendant has withdrawn its position that the three controverted documents relating to Shea's insurance claims procedures be filed under seal. *See* Dkt. # 246. Accordingly, Plaintiffs' Motion to Seal is moot, and Plaintiffs' Motion to Compel (Dkt. # 191), together with supporting declaration and attached exhibits (Dkt. # 192), shall be unsealed.

(6) <u>Motion to Compel Defendant to De-Designate Documents Marked Confidential (Dkt. ## 191, 193)</u>

The Court denies Plaintiffs' motion to compel Shea to de-designate its documents marked "confidential" and "highly confidential," as it lacks the authority to grant the relief that Plaintiffs request. The Court previously declined to enter the parties' stipulated protective

ORDER ON MOTIONS – 26

order under which Shea affects these designations (Dkt. # 25), finding that it failed to comply with LCR 26. *See* Dkt. # 26. Plaintiffs cannot now ask the Court to interpret and enforce the terms of an agreement that it expressly found lacks force to govern this proceeding. The Court further declines to make a prospective ruling on the confidentiality of documents that have not and may never be filed in this action. At the same time, the Court reiterates its admonition expressed at oral argument that Shea avoid overly burdensome blanket designations, which delay litigation by forcing the parties to engage in an excessive number of meet-and-confers.

(7) <u>Motion for Order Requiring Plaintiffs to Submit a Trial Plan (Dkt. # 210)</u>

   The Court strikes as moot Shea's Motion, as Plaintiffs submitted their proposed trial plan on response. *See* Dkt. # 235, Ex. 1.

(8) <u>Motion for Protective Order to Quash Defendant's Non-Party Subpoenas (Dkt. # 212)</u>

   The Court strikes as moot Plaintiffs' Motion for a Protective Order. The Court held a telephonic conference on this Motion, pursuant to which it instructed the parties to meet and confer in order to limit Plaintiffs' list of proposed trial witnesses and Defendant's corresponding subpoenas. The parties have done so, and the Court has entered a stipulated Discovery Order allowing for subpoenas of a limited number and scope to be served. *See* Dkt. ## 230, 244.

(9) <u>Motion to Compel Plaintiffs to Provide a Complete Response to Interrogatory (Dkt. # 222)</u>

   The Court grants Shea's Motion to Compel Plaintiffs to provide a complete response to Shea's Interrogatory No. 6, which asks Plaintiffs to "identify all marketing or other representations You actually received, reviewed, considered, and/or were otherwise presented to you by Shea, and which you specifically relied upon in buying Your house at Trilogy." *See* Dkt. # 222, p. 2. Plaintiffs object on the grounds that they have fully answered the interrogatory through written and oral testimony and that the additional discovery Shea seeks is duplicative and unduly burdensome. Contrary to Plaintiffs' first objection, their initial disclosures were insufficiently responsive as they referred Shea to pages of Plaintiffs'

ORDER ON MOTIONS – 27

deposition that did not identify marketing materials with particularity and provided only vague and incomplete identification of sources. *See* Dkt. # 223, Ex. D. As to Plaintiffs' additional objections, the Court finds that Shea's interrogatory is relevant to the claims and defenses in this case, which largely hinge on these alleged misrepresentations, and narrowly tailored to seek disclosure of sources on which Plaintiffs relied prior to effecting their purchase.

Plaintiffs shall serve a verified supplemental response specifically identifying all known information about any marketing or other representations named Plaintiffs actually received, reviewed, or considered (whether or not received directly from Shea), and upon which they specifically relied in buying their homes at Trilogy at Redmond Ridge. Plaintiffs must describe the actual statements or other information that constitute those representations, provide sufficient information for Shea to locate the sources of those representations, or verify that they do not possess and cannot locate this information.

Pursuant to Fed. R. Civ. P. 37(a)(5), Shea is entitled to its reasonable expenses incurred  in making this motion. Shea shall submit a declaration itemizing fees and costs within ten judicial days of the entry of this Order.

## <u>Conclusion</u>

For the reasons stated herein, the Court hereby finds and Orders as follows:

(1) Plaintiffs' Amended Motion for Class Certification (Dkt. # 108) is DENIED, as the Court determines that individual issues predominate over common issues as to Plaintiffs' sole claim for relief under the Washington Consumer Protection Act.

    a. The Court STAYS remaining case deadlines (Dkt. # 162).

    b. The parties shall meet and confer for the purpose of submitting a Joint Status Report no later than August 6, 2014 to propose a schedule for resolving named Plaintiffs' individual claims.

    c. The Clerk is directed to terminate Plaintiffs' superseded Motion for Class Certification (Dkt. # 57).

(2) Defendant's Motion to Strike Expert Reports (Dkt. # 127, pp. 50-55) is DENIED.

(3) Plaintiffs' Motion to Strike Expert Opinions and Declarations (Dkt. # 143, pp. 2-6) is GRANTED as to the expert opinions of Mr. Reeb and Dr. Cowan and DENIED in all other respects. The Court disregards the undisclosed opinions of Mr. Reeb and Dr. Cowan (Dkt. ## 134, 135).

(4) Defendant's Motion to Strike or Disregard Misleading Statements (Dkt. # 155) is GRANTED.  The Court disregards inaccurate statements in Plaintiffs' reply at Dkt. # 143, p. 21 & n. 142.

(5) Plaintiffs' Motion to Seal Portions of Plaintiffs' Motion to Compel (Dkt. # 166) is STRICKEN as moot. The Clerk is directed to unseal Plaintiffs' Motion to Compel and its supporting declaration and exhibits (Dkt. ## 168, 169).

(6) Plaintiffs' Motion to Compel Defendant to Produce Documents (Dkt. ## 164, 168) is GRANTED.

    a.  As to Plaintiffs' Fourth RFP No. 4, Shea shall timely produce settlement, non-disclosure, and confidentiality agreements to the extent that they relate to construction defects in the homes of named Plaintiffs at Trilogy, subject to notifying the other parties to these agreements and providing them an opportunity to object.

    b.  Shea shall timely produce documents pertinent to the presence in the homes of named Plaintiffs at Trilogy of the two defects specified in Plaintiffs' Fifth RFP No.'s 1 and 2.

    c.  The Court finds that Plaintiffs are entitled to an award of reasonable expenses associated with substantially prevailing on this Motion. Plaintiffs shall submit a declaration itemizing fees and costs within ten (10) judicial days of the entry of this Order.

(7) Defendant's Motion for Additional Depositions of Witnesses (Dkt. # 178) is STRICKEN as moot.

(8) Plaintiffs' Motion to Strike Defendant's Supplemental Exhibit (Dkt. # 186) is GRANTED. The Court disregards Defendant's supplement exhibit (Dkt. # 179).

ORDER ON MOTIONS – 29

(9) Plaintiffs' Motion to Seal Evidence to De-Designate Documents (Dkt. # 190) is STRICKEN as moot. The Clerk is directed to unseal Plaintiffs' Motion to Compel and supporting declaration and exhibits (Dkt. ## 191, 192).

(10)     Plaintiffs' Motion to Compel Defendant to De-Designate Documents Marked Confidential (Dkt. ## 191, 193) is DENIED.

(11)     Defendant's Motion for Order Requiring Plaintiffs to Submit a Trial Plan (Dkt. # 210) is STRICKEN as moot.

(12)     Plaintiffs' Motion for Protective Order to Quash Defendant's Non-Party Subpoenas (Dkt. # 212) is STRICKEN as moot.

(13)     Defendant's Motion to Compel Plaintiffs to Provide a Complete Response to Interrogatory No. 6 (Dkt. # 222) is GRANTED.

    a. Plaintiffs shall timely serve a verified supplemental response specifically identifying all known information about any marketing or other representations they actually received, reviewed, or considered, and upon which named Plaintiffs specifically relied in buying their homes at Trilogy at Redmond Ridge. Plaintiffs must describe the actual statements or other information that constitute those representations, provide sufficient information for Shea to locate the sources of those representations, or verify that they do not possess and cannot locate this information.

    b. The Court finds that Defendant is entitled to an award of reasonable expenses associated with substantially prevailing on this Motion. Defendant shall submit a declaration itemizing fees and costs within <u>ten (10) judicial days</u> of the entry of this Order.

DATED this 23rd day of July 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTIONS – 30